## STRAUGHAN ET AL. VS. THE STATE.

Upon the failure of the County Court to make out, and deliver to the sheriff, a list of sixteen persons qualified to serve as grand jurors, and of the sheriff to select and summon the requisite number himself, as prescribed by the statute, the Circuit Court has the implied constitutional power to direct the sheriff to summon, forthwith, the requisite number of qualified persons to serve as grand jurors for the term.

In criminal cases, though several persons concerned in the same offence, may be jointly indicted and tried together, the verdict and judgment against them, should be several: that is, fix the fine or punishment to be paid or suffered by each.

And where the jury return a verdict, fixing a joint fine against all the defendants, the court should send them back with directions to assess a separate fine against each: but if the verdict be received and recorded, the judgment should be arrested and a *venire de novo* awarded.

*Appeal from the Circuit Court of Independence County.*

Hon. BEAUFORT H. NEELY, Circuit Judge.

FAIRCHILD, for the appellant, Jeffrey.

FOWLER, for appellants, Straughan and Barnett. The law requires the *County Court*, at its *first* term, after the adjournment of the Circuit Court, to make out a *list* of *sixteen qualified* persons to serve as grand jurors, and to deliver it to the sheriff, which persons the sheriff is required to summon, &c. And that if no such term of the County Court is held, it is the *duty* of *the sheriff*, within 20 days after the time when it ought to have been held, to summon *sixteen* persons *so qualified*, &c. And if the *sixteen* persons *so summoned*, do *not attend*, on the first day of the Circuit Court, then *such court* shall order the sheriff, forthwith, to summon a *sufficient* number of *qualified* persons, &c. *Ark. Dig. Stat. (ed. of* 1848,) *p.* 628, *secs.* 4, 2, 3.

Now this statute neither gives the *Circuit Court, at any time*, the power to order a *venire* for an entire grand jury, nor to the sheriff, at any time, *except within the* 20 *days* after the adjournment of a Probate Court, which, under the general law, must necessarily be more than three months before the commencement of the Circuit Court.

The *Circuit Court* has *no power at all*, in the premises, *but merely* to *fill vacancies*—none *primarily* to order an *entire jury*, even on the failure of others to perform their duty. It is *only after* the *County Court had done* its duty, or the sheriff *has done* his, and the jurors *fail* to come in, that the power of the Circuit Court arises—and *not* where the County Court and sheriff both *fail* to do their duty altogether. And, this is no technical objection: because, the law requires the grand jury to be summoned so long before they are called upon to act—that persons interested in the empannelling of the grand jury, or liable to be indicted by it, may find out whether each person summoned is *qualified* or not, so that if need be, he may *challenge* for *cause*, or for *favor*, individually, or to the *array*. See 13 *Ark. Rep.* 743, 744, *Stewart vs. The State;* 1 *Chitty's Crim. Law*, 307, 308, 326.

.The *verdict* and *sentence*, in this case, is a most extraordinary transposition of a rule, deemed almost universal in the common law, and among civilized nations, that *each* individual shall answer for his *own crime only*, and never be held responsible for the criminal act of *others*—and this, even whether their acts violating the law be separate or in concert. Here a *joint* penalty is inflicted. Instead of finding that *each* defendant should pay a fine of $100, or of $300, or of any other given sum, the *joint fine* of $300 is imposed on all three, either one of whom may be made to pay it. On such an irregular *verdict*, a new trial ought to have been granted. 6 *Johns. Rep.* 69, *Root vs. Sherwood;* 1 *How.* (*Mis.*) *R.* 24, *Beall vs. Campbell; Ib.* 31, *Wolfe & George vs. Martin;* 9 *Ark. Rep.* 67, *Hammond vs. Freeman;* 1 *Hill,* (*N. S.*) *Rep.* 344, *Germond vs. The People;* 2 *How.* (*Miss.*) *Rep.* 771, *Dixon vs. Richards;* 5 *Yerg. Rep.* 308, *McDonald vs. McDonald.*

Clendenin, Attorney General, contra.

Mr. Chief Justice English delivered the opinion of the Court.

The grounds of this appeal will appear, from the following statement of facts:

At the September term, 1852, of the Independence Circuit Court, the following order was made:

"It appearing to this court, that the County Court, in and for the said county of Independence, failed to order the sheriff to summon a grand jury, to serve for the present term of this court. On motion of the State, by her attorney, it is ordered by the court, that a venire issue, commanding the sheriff to proceed to summon a panel of grand jurors, to serve for the present term of this court, returnable forthwith." (Sept. 6th.)

Record Entry, Sept. 7th.

"This morning appeared in court, Ambrose Alexander, sheriff, &c., and returned into court, a panel of grand jurors, to enquire

in, and for the county of Independence, during the present term of this court; who being called, the following came, to wit: Joab H. Peel, (who was by the court appointed foreman,) Joseph H. Egner, Charles M. Waugh, George W. Adrian, George W. Davis, James M. Jones, Thomes Elms, James P. Carter, Francis I. Capps, James H. Collum, John W. Engles, Robert Morris, and Henry Bales, making sixteen good and lawful men, of the county of Independence, who being empannelled, sworn, and charged, to enquire in, and for the body of said county, retired to consider of their duty.

It appears, that, during the term, the grand jury returned an indictment, against Carney C. Straughan, James M. Barnett, and Jesse Jeffrey, for false imprisonment of one Lewis Merritt. At a subsequent term, the defendants entered a joint plea of not guilty —were jointly tried by a jury, and joint verdict and judgment rendered against them for $300 fine.

Motions for new trial, and in arrest of judgment, were made and overruled.

The defendants took a bill of exceptions; from which it appears, that, on the trial, the State proved the imprisonment, as charged in the indictment, by H. N. Merritt and Lewis Merritt, and proved, by one Ireland, that the place of imprisonment spoken of by the other witnesses, was in Independence county.

The defendants then proved, by several witnesses, who were acquainted with the general character of H. N. Merritt, that his character was bad generally, and bad for truth and veracity, and that they could not believe him on oath. Some witnesses stated that the character of Lewis Merritt was not good for truth and veracity; and others stated that they had not heard much against him, and could not say but that they would believe him on oath.

The State, then, offered to prove, by one Gray, what the defendants had said to him, about having imprisoned or taken Lewis Merritt, to which the defendants objected, on the ground, that the State could only introduce rebutting testimony as to the character of the impeached witnesses, but the court overruled the ob-

jection.   Gray then stated, that Barnett and Jeffrey, or one of them, had told him that they had been down to H. N. Merritts, and taken two of the boys, but that one of them had escaped, one of the boys taken being Lewis Merritt.

The bill of exceptions does not set out, in detail, the testimony of each witness, but states, in general terms, what was proven by the witnesses as above.

The defendants asked the court to charge the jury, " that if they should find, from the testimony, that H. N. Merritt and Lewis Merritt were not worthy of belief on oath, they should entirely disregard their testimony, and that if they found, from the testimony, that H. N. Merritt and Lewis Merrit had sworn falsely and corruptly in one point, they should disregard their whole testimony."

The court refused so to instruct the jury, but charged them, "that the whole testimony and facts were before them, and that they should give to each, and all testimony, such credit as they thought it deserved."

The defendants excepted to the admission of Gray's testimony; and the refusal of the court to charge the jury, as moved by them.

The record states, that the defendants moved for a new trial and that it was overruled, but the motion does not appear, in the record before us, nor the grounds of it; nor does it appear, that defendants excepted to the decision of the court, overruling the motion.

1. It is urged, for the appellants, that the indictment was invalid, because the grand jury, who preferred it, were illegally summoned ; that the court had no power to order the sheriff to bring in a panel for the term, because the County Court had failed to furnish the sheriff with a list, or he had failed to summon them. That where grand jurors are summoned for the term, as directed by the statute, and fail to attend, the court can order *vacancies* in the panel supplied, but where none are summoned, the court cannot order an original panel.

It seems to be well settled, in most of the States, that an objection

4B

to the qualifications of grand jurors, or to the *mode of summon-ing*, or *empanneling* them, must be taken by plea in abatement, and that after plea in bar, and conviction, it is too late to raise such objections. *Whart. Amer. Cr. Law* 172, 3; *People vs. Griffin,* 2 *Barbour's Sup. Ct. Rep.* 427; *The State vs. Herndon,* 5 *Blackf.* 75; *Vather vs. The State,* 4 *ib.* 73; *The State vs. Freeman,* 6 *ib.* 248; *The State vs. Williams,* 3 *Stewart R.* 461; *Collier vs. State,* 2 *ib,* 388; *The State vs. Pile,* 5 *Ala. R.* 73. This court has made several decisions to the same effect. *Fenalty vs. The State,* 7 *Eng. R.* 630; *Beverly Brown vs. The State, ib.* 623; *The State vs. Wm. Brown, jr.,* 5 *Eng. R.* 78; *Brown vs. State, ib.* 607.

In *Stewart vs. The State,* 13 *Ark. R.* 744, Mr. Chief Justice WATKINS said, "It would seem that the objections to a grand juror, or to the array, which must be pleaded in abatement, and are waived by pleading to the indictment, are such as do not ap-pear upon the record of the court, and have to be brought to its notice by plea."

Without determining whether this distinction is well taken or not, as the objection to the mode in which the grand jurors were summoned in this case, appears upon the face of the record, we will consider its validity.

It is made the duty of the County Court, at its first term after the adjournment of the Circuit Court, to make out, and deliver to the sheriff, a list of sixteen persons, qualified to serve as grand jurors, and the sheriff is required, within twenty days thereafter, to summon them to appear, at the next term of the Circuit Court of the county. *Dig., ch.* 94, *sec.* 2. If the term of the County Court, at which grand jurors should be selected, is not holden, the sheriff is required, within twenty days thereafter, to select and summon the requisite number himself. *Ib. sec.* 3.

"If the sixteen persons, summoned to serve as grand jurors, shall not attend on the first day of the Circuit Court, such court shall order the sheriff, forthwith, to summon a sufficient number of persons qualified to serve as grand jurors, to supply the defi-ciency." *Ib. sec.* 4.

It may be inferred, from the record in this case, that there was not a failure to hold the term of the County Court, at which the grand jurors should have been selected, but a neglect of the court to make out the list, and deliver it to the sheriff, who adhering to the letter of the law, perhaps deemed himself unauthorized to se- lect and summon them in such case.

If the Circuit Court looked alone to the statute, for its power to supply the omission, and were compelled to stick to its letter, it might not have been warranted in ordering the sheriff, as it did, to summon a grand jury. But the Constitution confers, upon the Circuit Courts, original jurisdiction of criminal cases, and the bill of rights, (*sec.* 14) declares, that no man shall be put to an- swer any criminal charge, but by presentment, indictment, or im- peachment. A presentment, or indictment, must be made, or preferred by a grand jury. *Eason vs. The State* 6 *Eng. R.* 482. The Legislature have prescribed the number, qualifications, and mode of selecting and summoning grand jurors. If any, or all of the jurors summoned, fail to attend, the court is expressly au- thorized, by the letter of the statute, to "supply the deficiency;" and, we think, it may safely be said, that if by failure, or neglect of the County Court, or sheriff, no jurors are summoned, the Cir- cuit Court would have the implied constitutional power to direct the sheriff, as was done in this case, to summon forthwith, the re- quisite number of qualified persons to serve as grand jurors for the term. And the exercise of this power would, also, well com- port with the spirit and intention of the legislation on the sub- ject. *Dig., ch.* 94. If this power were denied to the court, the administration of the criminal law might not unfrequently be greatly delayed, by the casual or wilful failure of sheriffs, &c., to discharge their duties. In support of this position, see *Whart. Cr. Law* 168; *United States vs. Hill et al.,* 1 *Brock* 156; *Shaffer vs. The State,* 1 *How. Miss, R.* 238; *Woodsides vs. The State,* 2 *ib.* 655; 1 *Meig's Digest,* 382.

2. In the caption sent up with the indictment in this case, the names of but *thirteen* grand jurors, appear. If there were in

fact, but thirteen persons, impannelled as a grand jury, the law requiring *sixteen*, no indictment found by them, would be valid.

In the case of *Lavillian vs. Lane & Co.*, 3 *Eng. Rep.* 374, this court, by JOHNSON, C. J., said: "The record states, that twelve good and lawful men returned the verdict; but upon inspection, it appears, that there were but *eleven* names recorded. The record is contradictory in this respect, and whenever that is the case, the presumption is, that that portion of it is true, and sustained by the facts of the case, which is in accordance with, and answers the requirements of the law, unless the contrary shall be clearly made to appear, by exceptions taken at the time, or in some mode by which the matter may be brought before this court."

In the case now before us, the *caption* states, that there were *sixteen good and lawful men*, &c., though but thirteen names are transcribed. The only difference between this case and the one above quoted, is, that this is a criminal case, and the objection relates to the grand jury, and that was a civil action, and the objection relates to the traverse jury. Whether the same reasoning applies to both cases, need not now be decided.

There is a reasonable presumption in this case, that the clerk made an omission in transcribing the names of the grand jurors, in preparing the transcript for this court, and if this were the only error, appearing upon the record, a special *certiorari*, would be sent down, in accordance with the practice of this court, to bring up a perfect transcript of the *caption*. *Beverly Brown vs. The State*, 7 *Eng. R.* 623 ; *Stewart vs. The State*, 13 *Ark R.* 744 ; *Cornelius vs. State*, 7 *Eng. R.* 797.

3. In criminal cases, though several persons, concerned in the same offence, may be jointly indicted and tried together, unless they or the State elect to sever, (*Digest*, ch. 52, sec. 96, 177, 210,) yet each one is answerable for his own criminal conduct, and not for his associates, and the verdict and judgment against them should be several: that is, should fix the fine or punishment, be paid, or suffered, by each—but the judgment for costs may

be joint.    *Calico & Drake vs. The State*, 4 *Ark.* 430; *Whart. Cr. Law* 156, 694; *March vs. The People*, 7 *Barbour Sup. Ct. Rep.* 393; *State vs. Gray*, 10 *Missouri Rep.* 440.

· In this case, when the jury brought in their verdict, fixing a joint fine against the defendants, the court should have sent them back, with directions to assess a separate fine against each; but the verdict having been received and recorded, the judgment should have been arrested, and a *venire de novo* awarded.    1 *Chitty Cr. Law* 547, 8; *State vs. Arrington*, 2 *Murph. R.* 571.

4. The exceptions to the admission of the testimony of the witness Gray, and the refusal of the court to charge the jury, as moved by the defendants, were both waived by the motion for a new trial, it not appearing, in the record before us, that these exceptions were made grounds of the motion for a new trial, and reserved by bill of exceptions to the decision of the court overruling the motion.    It is, therefore, not necessary to consider them.

For the error of the court, in refusing to arrest the judgment on the objection, that the verdict and judgment were for a joint fine, and not for several fines, the case must be reversed, and the cause remanded, for further proceedings according to law, and not inconsistent with this opinion.

Mr. Justice SCOTT not sitting.