# SUPREME COURT,

OF THE

## STATE OF ARKANSAS,

AT THE

## NOVEMBER TERM, 1877.

---

### CAIRO AND FULTON RAILROAD CO. VS. TROUT.

1. RAILROAD: RIGHT OF WAY: *Proceedings to assess damages for.*
   Under the provisions of the act of January 22d, 1855 (ch. 140, Gantt's Dig.), either the land owner or the corporation could apply for an assessment of damages for right of way; written notice, as prescribed by the statute, should be given before the appointment of commissioners to assess the damages.

2. ————: *Same.*
   Where the defendant in a proceeding under the statute fails to appear, it is not necessary to enter a default before appointing commissioners to assess damages.

3. CORPORATION: *Service of process upon.*
   Under a statute providing that, a summons against a corporation may be served on the president, chairman of the board of trustees, or other chief officer; or if its chief officer is not found in the county, upon its cashier, treasurer, secretary, clerk, or managing agent, etc.; when the service is not upon the chief officer, the return must show that he could not be found in the county, also upon whom the summons was served, naming the person and his office.

| 32 | 17 |
|---|---|
| 59 | 586 |
| 32 | 17 |
| 62 | 145 |
| 32 | 17 |
| 72 | 177 |
| 32 | 17 |
| e85 | 96 |

4. CONSTITUTIONAL LAW: *Right of trial by jury, etc.*

A provision in the Constitution of 1836, that "the right of trial by jury shall remain inviolate," related to the trial of issues of fact in civil and criminal causes, and not to a statutory proceeding for the assessment of damages for the appropriation of a right of way.

5. ————: *Same.*

The provision of the Constitution of 1868, requiring that damages for the appropriation of a right of way should be assessed by a jury of twelve men, did not, as to the Cairo and Fulton Railroad Company, a prior existing corporation, repeal the act of January 22d, 1855, providing for the assessment of damages by five commissioners, in the absence of a statute authorizing the land owner to proceed in conformity to the new constitutional requirement.

6. APPEAL: *Motion to correct error in court below, etc.*

When the defendant is actually served with process, and the writ or return is defective, he should appear and move to quash, or if judgment is taken by default, move to set it aside before appealing; but this rule does not apply when the defendant has not been served with notice.

APPEAL from *Saline* Circuit Court.

Hon. L. D. BELDIN, Circuit Judge.

*J. M. Moore,* for appellant.

*Z. P. H. Farr, contra.*

ENGLISH, CH. J.:

On the 12th February, 1874, John H. Trout filed a petition in the Circuit Court of Saline County, then in session, in which he stated, in substance, that he was the owner of the west half of the northwest quarter of section seventeen, township three south, range fifteen west, which he held by warranty deed. That during the latter part of the year 1872, and the early part of the year 1873, the Cairo and Fulton Railroad Company, without his consent, or any contract with him, entered upon his land above described, and appropriated and used his land, earth, timber, etc., in the construction of said railroad, to his very great damage; and that said company had totally failed to have said damages assessed. Prayer, that the judge of the court appoint

five impartial and disinterested free-holders, citizens of said county, not related to him or stockholders in said company; and that they be required to assess his damages, etc. That a copy of the petition be served on the company, and for other relief, etc.

On the same day that the petition was filed, the court made an order, reciting the substance of the petition, and appointing five commissioners, naming them, disinterested free-holders, citizens of the county, not related to the petitioner, nor stock holders in the company, and directing them to proceed to examine and view said land, and assess the damages done petitioner by reason of the location and construction of said railroad on his land, taking into consideration the benefit of said road in the increase of the value of said land or otherwise; and that they report their assessment to the next term; and that the report should be signed and sworn to by at least three of the commissioners.

It was further directed by the court, that a copy of the order be furnished to the commissioners, and a copy of the order as well as a copy of the petition, be furnished said company, or its agent in said county, and that the company be summoned to appear at the next term of the court, and show cause, if any it had, why the report of said commissioners should not be confirmed, and entered as a judgment of the court.

It does not appear that a copy of the order was served on the company in any mode.

On the 20th February, 1874, the clerk of the court issued a summons commanding the sheriff " to summon the Cairo and Fulton Railroad Company, or one of its agents in Saline County, to answer on the first day of the next June Term of the Saline Circuit Court, a complaint filed against it in said court by John H. Trout, and warn it that upon its failure to answer, the complaint will be taken for confessed," etc.

Upon which the sheriff endorsed the following return:

"I have this the 21st day of February, 1874, duly served the within, by delivering a copy of the same to one of the within agents as therein commanded. Horatio Riley, agent."

It appears that the commissioners were furnished with a certified copy of the order of the court for an inquest of damages, upon which there is an endorsement signed by four of them, sworn to before a justice of the peace, 9th May, 1874, as follows:

"To Judge Belding, Judge of the Hon. Circuit Court of Saline County: We, the commissioners, beg leave to report that we have examined and viewed numbers of land above named, and assess the damages at $800, and we do not consider that the said railroad has enhanced the value of said land any."

The other commissioner estimated the damages at $1,000.

The report, with a plat of the land, was filed in the office of the clerk of the court, on the 12th of May, 1874.

On the 9th of June, 1874, the court rendered the following judgment:

"Comes the petitioner, by attorney, and the commissioners appointed at the last term of this court to view the land described in the petition in this cause, and assess the damages done thereto by the defendant, having filed their report in the office of the clerk of this court, on the 12th day of May, 1874, as appears from the endorsement of said clerk made thereon, and it appearing to the satisfaction of the court that no objections have been or are made to said report; and it further appearing to the satisfaction of the court that a majority of said commissioners under oath assessed the damages done said land by the defendant at the sum of $800: It is therefore considered by the court, that the plaintiff do have and recover of and from said defendant the sum of $800, as damages, and all the costs in this cause, for which let execution issue.

"And it is furthered considered, adjudged and decreed that all the right, title and interest of the plaintiff, of, in and to said land for a space of one hundred (100) feet on each side of said railroad, through said land, be and the same is hereby divested out of the said plaintiff and his heirs and assigns and vested in the defendant and its successors forever."

On the 3d of August, 1874, the defendant corporation obtained from the clerk of this court, the grant of an appeal from the judgment.

I. The first point made for the appellant is, that the proceedings in the court below were *ex parte*, and without notice to it.

The application for the inquest was no doubt made under the provisions of the act of 22d January, 1855, Gould's Digest, ch. 140, there being no other statute providing for such inquest of damages on the application of the owner of land.

Under that act, either party, the railroad corporation, or the owner of the land, could make the application, and cause the damages to be assessed as therein prescribed. The first and second sections prescribed the manner of making the application by the corporation, the notice to be given to the owner of the land, and the mode of ascertaining the damages, etc. The fourth section provides for an application, etc., by the land owner "as hereinbefore directed." Meaning, doubtless, that when the application is made by the owner of land, the same steps, substantially, must be taken as are directed to be taken when the application is made by the corporation.

The first section provides, substantially, that where a railroad has been surveyed and located over or upon land, and the owner has not, by agreement, relinquished the right of way, or is a *femme covert*, infant, person of unsound mind, or non-resident of the State, the case shall be specially stated in writing, by the

railroad corporation, to the Judge of the Circuit Court of the county in which such land, or the greater part thereof, is situated, accompanied by a plat descriptive of the land required for the road. The application may be made to the judge either in term time or in vacation. Written notice of such application must be given to the owner of the land, and delivered to him in person, or left at his residence, at least ten days before making the application, if such owner reside in the county; or if he be a minor, to his guardian; or if of unsound mind, to his guardian or committee. If the owner reside out of the county, or is a non-resident of the State, he may be served with actual notice, or by publication, etc. Upon such application, after such notice, the judge is required to appoint five impartial and disinterested free-holders, citizens of the county, who are not stockholders in the railroad company, nor related to the owner of the land, to view the land, etc., assess and report the damages, etc.

In this case appellee presented his petition to the Circuit Judge in term time, and his petition seems to be in good enough form, but does not appear to have been accompanied by any plat descriptive of that part of his land taken or covered by the road.

The material defect, however, in his proceedings, is that he failed to give appellant any notice whatever of his application, and the judge proceeded, at once, on the presentation of the petition, to select and appoint the persons to view the land, and assess the damages, in the absence of the appellant, and without allowing it any opportunity to be represented and heard in the matter of the appointment; a step of importance to both parties. That the statute contemplates such notice, and that justice requires it to be given, there can be no doubt. Cool. Con. Lim., 563.

After the court had appointed the commissioners, as they are termed in the order, it directed the appellant to be served with a copy of the petition, and of the order, and to be summoned to appear at the next term of the court, and show cause, if any it had, why the report of the commissioners should not be confirmed, and entered as the judgment of the court.

The court should not have appointed the commissioners on such presentation of the petition, but should have required notice to be given to the appellant of the application, and delayed the appointment until after the notice had been served for the length of time required by the statute.

Moreover, the return of the sheriff upon the summons issued by the clerk, under the order of the court, does not show a legal service upon appellant, and the final judgment was rendered without appearance by it.

The general statute provides that: " Where the defendant is a corporation, created by the laws of this State, the service of the summons may be upon the president, chairman of the board of trustees, or other chief officer; or if its chief officer is not found in the county, upon its cashier, treasurer, secretary, clerk, or managing agent," etc.    Gantt's Digest, sec. 4515.

And the officer executing the writ, must state in his return the time and manner of service.    Ib., secs. 4513, 4837.

If the chief officer of the corporation was not to be found in the County of Saline, the sheriff should have stated that fact, in his return, and shown a service upon some person who was its cashier, treasurer, secretary, clerk, or managing agent, naming the person and his office.    *Cairo and Fulton Railroad Co.* v. *Hecht & Stevens,* 29 Ark., 661 ; *Odd Fellows' Building Association* v. *Hogan,* 28 Ib., 261 ; *Aikin* v. *Gold Mining Co.,* 6 Cal., 186 ; *Bruce, et al.* v. *Arrington,* 22 Ark., 362, and cases cited.

If the appellant has been served with notice of the application, ten days before it was made, no further notice perhaps would have been necessary, none other being required by the statute under which the proceedings were had. Afforded by such notice the opportunity of being represented when the application was presented, heard, and the commissioners appointed, it may have been obliged to take notice of all subsequent legal steps taken in the matter. See *Dickey* v. *Tennison*, 27 Mo., 373.

II. It is next insisted for appellant, that a default should have been entered against it, before commissioners were appointed to assess the damages, etc.

Such is not the practice contemplated by the statute under which the proceedings were had.

When the corporation has notice of the application, it may appear and contest the appointment of commissioners, etc. If it appear and make no objections, or if objections are made and overruled, or if it fail to appear, and a proper case is made by the petition, the Judge, or court, if in session, may appoint the commissioners, and it is made their duty to view the land, assess the damages, and file their report in the office of the clerk of the court, and if no valid objection be made to the report, the court may enter judgment at the term succeeding the filing of the report, etc.

III. It is submitted for appellant that the damages should have been assessed by a jury, and not by a commission of five men.

By sec. 6 of the Bill of Rights of the Constitution of 1836, which was in force when the act of 22d January, 1855, under which the proceedings in this case were had, was passed, it is declared that: " The right of trial by jury shall remain inviolate."

The word "jury" is here used in its common law sense, and means twelve men, and the Legislature cannot abridge the number. *State* v. *Cox*, 8 Ark., 446; *State* v. *Morrill*, 16 Ib., 384.

This provision of the bill of rights, however, relates to the trial of issues of fact, in civil and criminal causes, in courts of justice, and has no relation to cases of the kind now under consideration. *Beekman*, v. *Saratoga and Schenectddy Railroad Co.*, 3 Paige, 75; *People* v. *Michigan Southern Railroad Co.*, 3 Mich., 496; Pierce Am. R. R. L., 166; *Bonaparte* v. *Camden and Amboy Railroad Co.*, 1 Baldwin, C. C., 205. *Hickox* v. *Cleveland*, 8 Ohio, 543.

So much of the act of January 22d, 1855, as provides for the assessment of damages by a commission of five men, was not in conflict with any provision of the Constitution of 1836, and was valid when the act was passed. Is that part of the act yet in force, or was it in force when the commissioners in this case were appointed, and made the assessment?

Sec. 48, art. v., Constitution 1868, provides : ." The General Assembly shall pass no special act conferring corporate powers, Corporations may be formed under general laws, etc.  *  *  * No right of way shall be appropriated to the use of any corporation until full compensation therefor shall be first made in money, or first secured by a deposit of money, to the owner, irrespective of any benefit from any improvement proposed by such corporation; which compensation shall be ascertained by a jury of twelve men, in a court of record, as shall be prescribed by law."

There is a similar clause in the Constitution of 1874, but the proceedings in the case before us were had while the Constitution of 1868, was in force.

We had occasion to comment on a portion of the above section of the Constitution, of 1868, in *Cairo and Fulton Railroad Co.*

v. *Turner*, 31 Ark., 506, and held that Turner had the right to proceed under the act of 22d January, 1855, for the ascertainment and recovery of damages, and should have resorted to that remedy, instead of ejectment for the land appropriated by the corporation, but it was not necessary to decide in that case, whether so much of the act as required the damages to be assessed by five men, had been repealed or modified by that clause of the above section of the Constitution of 1868, which provides that the compensation shall be ascertained by a "jury."

"Which compensation shall be ascertained by a jury of twelve men, in a court of record, as shall be prescribed by law."

In *Lamb, et al.* v. *Lane*, 4 Ohio State R., 167, a case which arose under a similar provision of the Constitution of Ohio (omitting the words "twelve men") the court held that the word "jury" meant a tribunal of twelve men, presided over by a court, and having the allegations, evidence and arguments of the parties; and that they might be sent to inspect the premises. The court also held that the provisions of the Constitution did not execute itself, but that provision must be made by law for the selection, etc., of a jury; and this is plainly indicated in the clause of the Constitution of 1868, above copied.

Sec. 23, of the act of July 23d, 1868, providing for a general system of railroad incorporation, undertook to provide a mode for ascertaining damages, and compensating land owners for the right of way over their lands. The damages were to be ascertained by five commissioners, appointed on the application of the corporation. By its express language it applied to the corporations organized under the act, and could have no application to the Cairo and Fulton Railroad Co., which was chartered in 1853. *Cairo and Fulton Railroad Co.* v. *Turner*, 31 Ark., 506.

This section of the act of July 23d, 1868, was held to be in conflict with sec. 48, art. v. of the Constitution of 1868, in

*Whitehead and wife* v. *Arkansas Central Railroad Co.*, 28 Ark., 461, for the reason, among others, that it made provision for ascertaining the damages of the land owner, on the application of the corporation, by a commission of five men instead of a jury of twelve men as prescribed by the Constitution.

By the act of 28th April, 1873 (Gantt's Digest, secs. 4944-8), provision was made for ascertaining the damages by a jury, on the application of " any railroad company organized under the laws of this State."

Remarking on this act in *Cairo and Fulton Railroad Co.* v. *Turner*, the court said : " This act was passed after the appellant corporation had entered upon and constructed its road over the land of the appellee, and if it was intended to apply to railroad corporations other than such as were organized under the general law, which is by no means clear, we would not give it a retroactive effect so as to make the appellant corporation, acting under a long pre-existing special charter, a trespasser in entering upon the land of appellee."

In the case now before us, appellant it appears, from allegations in the petition, entered upon and constructed its road over the land of appellee " during the latter part of the year 1872, and the early part of the year 1873," and no doubt before the passage of the act of 28th April, 1873.

The act, had been passed, however, before appellee filed his petition for the appointment of commissioners to assess his damages (12th February, 1874) but the act made no provision for an application by the land owner, for the selection of a jury, etc., at his instance. Appellee had therefore to resort to the act of 22d January, 1855, which was the only act in force affording him a remedy.

The reason why the legislature deemed it unnecessary to provide in the act of 1873, for an application by the land owner,

was, perhaps, that a railroad corporation organized under a general law, as provided by the Constitution of 1868, could not enter upon land and appropriate the right of way, without first making compensation, etc., and if it undertook so to do, the land owner might treat it as a tresspasser. *Whitehead and wife* v. *Arkansas Central Railroad Co., supra.*

IV. It is insisted for appellee, that appellant should have applied to the court below, to set aside the judgment, before appealing to this court.

In *Files* v. *Robinson & Co.,* 30 Ark., 487 , this court said : " Under the Code Practice, when the defendant is served with a defective summons he must move to quash, or, if judgment be rendered on default, ask the court to set it aside before he appeals or takes a writ of error. This seems to be the general rule."

In this case the appellant was not served with any notice of the application made by appellee to the court below, for the appointment of commissioners to assess his damages. The notice of the application is required by the statute, as we have above seen, and without it the proceedings are irregular. *People* v. *Tallman,* 36 Barb., 222; *Boonville* v. *Ormrod,* 26 Mo., 193.

After the court had taken the important step of selecting the commissioners to assess the damages, in the absence of appellant, it directed appellant to be summoned to appear at the next term, and show cause why the report of the commissioners should not be confirmed. A summons was issued, but not served on appellant in any mode known to the law.

In an ordinary suit, where the defendant is actually served with process, and the writ or return is defective, no doubt, under the Code Practice, he should appear, and move to quash, or if judgment is taken by default, move to set it aside, before appeal-

ing, etc. Gantt's Digest, sec. 1100. But this rule could hardly apply where the defendant has not been served with notice.

The judgment must be reversed, and the cause remanded with instructions to the court below to set aside, not only its judgment confirming the report of the commissioners, but the order appointing them, and for further proceedings; and to treat the appellant as being in court by reason of its prosecution of this appeal.