Alex STREETT, Prosecuting Attorney,
Fifth Judicial District *v.* Russell
ROBERTS, Circuit Judge, Fifth Judicial District

75-211 529 S.W. 2d 343

Opinion delivered November 10, 1975

*Alex Streett,* Pros. Atty., *Jim Guy Tucker,* Atty. Gen., by: *Jack Lassiter,* Asst. Atty. Gen., for Petitioner.

*George Hartje, William M. Clark,* for Respondent.

GEORGE ROSE SMITH, Justice. The petitioner, as prosecuting attorney of the Fifth Judicial District, seeks a writ of prohibition to terminate proceedings by a special grand jury in Faulkner County, impaneled by direction of the respondent as circuit judge of the district. The petitioner alleges that the order impaneling the special grand jury exceeds the authority of the circuit court and is therefore void. Three questions are raised by the pleadings in this court and discussed in the parties' briefs.

First, does the petitioner, as prosecuting attorney, have standing to question the method by which the grand jury was selected? We have no doubt that he has. It is his statutory duty to "commence and prosecute" civil and criminal actions in which the State or any county in his circuit may be concerned. Ark. Stat. Ann. § 24-101 (Repl. 1962). If the grand jury proceedings are void it is clearly appropriate for the prosecuting attorney to commence and prosecute an action to avoid the waste of the taxpayers' money necessarily involved in the futile trial of criminal cases that might be tainted with reversible error from the very outset.

Second, is the writ of prohibition the proper remedy? We have no doubt that it is. A basic purpose of the writ is to prevent a court from exercising a power not authorized by law, when there is no other adequate remedy. *State ex rel. Purcell* v. *Nelson,* 246 Ark. 210, 438 S.W. 2d 33 (1969). If the circuit court in this instance is exercising its authority in a manner contrary to law, prohibition is the only remedy to provide prompt and effective relief in the public interest.

Third, was the circuit judge's method of impaneling a special grand jury contrary to law? We have no doubt that it was. There is no dispute about the facts. A regular grand jury selected according to law was in session at the May, 1975, term of the Faulkner Circuit Court. On July 2 the circuit judge discharged that grand jury. On July 15 the judge

ordered the county sheriff to select 25 grand jurors from the county. That is the special grand jury whose legality is at issue.

The respondent's action is defended on the basis of our holding in a number of cases, especially the *Rowland* case: *Rowland* v. *State,* 213 Ark. 780, 213 S.W. 2d 370 (1948), cert. den. 336 U.S. 918 (1949); *Brewer* v. *State,* 137 Ark. 243, 208 S.W. 290 (1918); *Wilburn* v. *State,* 21 Ark. 198 (1860); and *Straughan* v. *State,* 16 Ark. 37 (1855). In some of those cases we recognized that in certain circumstances the circuit court could cause a grand jury to be selected not according to the statutes but "in the exercise of its inherent constitutional right." *Rowland* v. *State, supra.* Neither the origin nor the extent of that inherent constitutional power is made clear by the decisions. Moreover, the court recognizes that even that inherent authority is subject to legislative control. For instance, in *Rowland* we cited *Wilburn* as authority for the existence of the inherent constitutional right, but in *Wilburn* the court took pains to say: "Whatever practical inconvenience may result from this construction, it must be remembered that the whole subject is within the control of the legislature, and that we have no authority to sanction a departure from what would seem to be an imperative provision of the statute."

Even though the General Assembly apparently tolerated the courts' exercise of the asserted inherent power, the basic decisions were rendered in 1855 and 1860. That was shortly before the adoption of the Fourteenth Amendment and the better part of a century before the Supreme Court began to interpret that Amendment as severely limiting the freedom of the States in the selection and composition of grand juries and petit juries.

However long the legislative silence with regard to jury selection may have continued in Arkansas, it certainly ended in 1969, when Act 568 made the use of the jury wheel mandatory in the selection of grand and petit jurors. Ark. Stat. Ann. §§ 39-101 to -108 and 39-201 to -220 (Supp. 1973). That statute was obviously intended by the General Assembly to put an end to the possible constitutional infirmities in the earlier systems of jury selection. That the jury-

wheel method of selection is imperative is made plain by Section 26 of Act 568: "No person shall be summoned to serve as a grand or petit juror who has not been selected under the provisions of this Act, unless this requirement is waived by the parties." § 39-218. We cannot reasonably interpret the words "No person" to mean 25 persons, as the respondent's argument would have us do.

We are not overlooking counsel's reliance upon Ark. Stat. Ann. § 43-934 (Repl. 1964), which provides that when a grand jury is not in session the circuit court in its discretion may, by an order entered of record, impanel a special grand jury. That statute, originally part of the Revised Statutes of 1838, was amended by Initiated Act 3 of 1936. We do not construe it to exempt the courts from all legislative control in the matter of selecting special grand juries. The selection must still be made according to the governing statutes. Consequently the jury-wheel law was effective to fill the gap left by Section 43-934, even though the jury-wheel act did not receive the two-thirds vote that is required to amend an initiated act. There was no amendment, simply an implementation.

It follows from what we have said that the circuit court was without authority to impanel a special grand jury without complying with the safeguards and procedures contained in the 1969 act requiring the use of the jury wheel in the selection of grand juries and petit juries.

The writ of prohibition is granted.

JONES and BYRD, JJ., concur. FOGLEMAN, J., dissents.

J. FRED JONES, Justice, concurring. I concur with the majority opinion in this case but I desire to express my additional reasons for granting the writ.

The Criminal Code, Ark. Stat. Ann. § 43-901 (Repl. 1964), provides: "The selecting, summoning, and impaneling of a grand jury shall be as prescribed by law." When *Rowland v. State*, 213 Ark. 780, 223 S.W. 2d 370, relied on by the respondent, was decided in 1948, Ark. Stat. Ann. § 39-201

(Repl. 1962) provided: "The circuit courts, at their several terms, shall select three (3) jury commissioners..." This section then prescribed the qualifications and oath to be administered to the commissioners. The duties of the commissioners in the selection of grand jurors were then prescribed and set forth in § 39-206. Section 39-213 then provided as follows:

"The grand jury shall be selected from those designated as grand jurors, but if any should be absent, incompetent to serve, or excused, the deficit shall be made up by taking a sufficient number of competent alternates present, in the order in which their names appear upon the list. If there shall not be a sufficient number of competent grand jurors and alternates present and not excused to form the grand jury, the court may compel the attendance of absentees, or order bystanders to be summoned to complete the jury."

Section 39-222 then provided:

"If, for any cause, the jury commissioners shall not be appointed, or shall fail to select a grand or petit jury, as provided in this chapter, or the panel selected shall be set aside, or the jury lists returned in court shall be lost or destroyed, the court shall order the sheriff to summon a grand or petit jury of the proper number, who shall attend and perform the duties thereof, respectively, as if they had been regularly selected."

Thus, it is seen that circuit judges and sheriffs had rather unlimited authority and discretion in the selection of grand jurors when *Rowland* v. *State, supra,* was decided, and it was apparently under this last section (§ 39-222) that the respondent circuit judge acted in the case at bar. Whatever may have been the authority and discretion in the impaneling of grand juries in 1948, that authority was limited to the procedure as prescribed by law in Act 568 of 1969. I do not question the authority of the Legislature to limit or prescribe the method and procedure of selecting grand juries.

Section 9 of Act 568 of 1969 provides for the appoint-

ment, qualifications and oath to be administered to not less than three or more than 12 jury commissioners, and Section 11 of the Act provides as follows:

"If any Commissioner shall become disqualified, die, or be excused, the Judge may, in his discretion, appoint a successor commissioner."

Section 26 of the Act provides as follows:

"No person shall be summoned to serve as a grand or petit juror who has not been selected under the provisions of this Act, unless this requirement is waived by the parties."

Section 25 of the Act provides for the drawing of grand jurors "from the wheel or box from which petit jurors are drawn," and provides that "the Circuit Judge may direct the Jury Commissioners to provide the minimum number of names for a separate grand jury wheel or box. . ."

Section 20 of the Act provides as follows:

"If at any time it appears that a sufficient number of qualified jurors are not available to try scheduled cases, additional names may be drawn and recorded in the Jury Book in open court. These jurors shall be summoned as provided for in Section 18. The Circuit Judge may, at any time, in the exercise of his discretion direct the Jury Commission who selected the original names placed in the wheel or box or new Commissioners designated by him to meet and submit the names and last known addresses of additional registered voters whom the Commissioners believe to be qualified jurors. These names and addresses shall be placed by the commissioners within the wheel or box when it is next unlocked in open court and prior to any additional drawing of jurors, and a master list shall be presented to the court as provided in Section 13."

Ark. Stat. Ann. §§ 39-206, 39-213 and 39-222, *supra,* were specifically repealed by Section 30 of Act 568, and Sec-

tion 31 repealed all laws and parts of law in conflict with Act 568.

There is no question in my mind that the writ should be granted.

CONLEY BYRD, Justice, concurring. The suggestion in *Rowland* v. *State*, 213 Ark. 780, 213 S.W. 2d 370 (1948), that a circuit court has "inherent authority" not given to it by the constitution should be overruled. The Arkansas Constitution, Art. 4, § 1, provides:

> "The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to-wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another."

The constitutional framers, therefore, built in a workable and desirable system of checks and balances to prevent or make harmless the abuse or usurpation of power by any one of the three departments of government. By observing how easily Mrs. Indira Gandhi of India flouted the election laws of her country through her control of both the legislative and executive branches of her country's government, any student of government can understand the necessity for the zealous observance of the constitutional mandate on the separation of powers. Without such zealous observance of the separation of powers, any modern day Napoleon could arrogate unto himself the right to determine not only those who will be prosecuted but also those who will be elected. It should be remembered that Mrs. Gandhi caused a number of arrests to be made before the legislative branch exonerated her. Consequently, I respectfully suggest that any supposed inherent authority of any department of government to exercise the powers of another department should be disclaimed and denied at the first and every other opportunity.

For the reasons stated, I respectfully concur.

JOHN A. FOGLEMAN, Justice, dissenting. In order that this case be put in proper focus, we must consider the question we are really deciding. The question is "Does any circuit judge in Arkansas have the power, in his discretion, to impanel a special grand jury when the regular grand jury has been discharged and the jury wheel has been quashed?" I fear that this case has not been so viewed. We are not concerned here with the validity or propriety of the order quashing the jury wheel. There is nothing in this record to establish any improper, ulterior or arbitrary motives on the part of the circuit judge in the actions taken by him. We cannot presume that he has acted improperly. *Jones* v. *Capers,* 231 Ark. 870, 333 S.W. 2d 242. It is also important that attention not be diverted to a question not before us, i.e., the question whether the special grand jury selected met constitutional requisites that it be a representative cross section of the community, selected without discrimination against any recognizable group entitled to equal protection.[1]

It is elementary that the writ of prohibition will not be granted unless the petitioner's right to it has been clearly established and the tribunal against which it is sought is wholly without jurisdiction. *Arkansas State Highway Commission* v. *Roberts,* 248 Ark. 1005, 455 S.W. 2d 125. If there were evidence that the circuit judge had acted from grossly improper motives, a different question would have been presented, and we might have been able to say that such a flagrant abuse of discretion had been manifested as would justify issuance of the writ, although the writ is not to be used to control the trial court's discretion or correct erroneous action. *State ex rel. Purcell* v. *Nelson,* 246 Ark. 210, 438 S.W. 2d 33.

With the focus thus directed, we may examine the basic issue. In my opinion, this case is governed by the decision in *Rowland* v. *State,* 213 Ark. 780, 213 S.W. 2d 370. There a grand jury selected by jury commissioners had been discharged. Thereafter, the circuit judge directed the sheriff to summon a special grand jury. The statute relied upon is Ark.

---

[1] It seems to me that United States Supreme Court interpretations under the Fourteenth Amendment have no other application. I am not aware of any case that has any impact upon the method of selection, so long as it does not result in discrimination.

Stat. Ann. § 43-934 (Repl. 1964), both there and here. That statute has remained intact. The source of its present language was Initiated Act No. 3 of 1936. We made certain specific and controlling statements in *Rowland* and no attempts to distinguish authorities cited in that opinion change these statements one whit. They are:

Appellant says that the Special Grand Jury should have been selected by the jury commissioners, rather than by the sheriff. But we have repeatedly held, as stated by Mr. Justice Hart in *Brewer* v. *State*, 137 Ark. 243, 208 S.W. 290, 291:

"Moreover, under our system, there are two modes by which a grand jury may be lawfully selected. One is where they are selected pursuant to the provisions of the statute; and the other is where the circuit court causes them to be selected in the exercise of its inherent constitutional right. *Wilburn* v. *State,* 21 Ark. 198, and *Straughan* v. *State,* 16 Ark. 37."

To the same effect is *Edmonds* v. *State,* 34 Ark. 720. The omission, in section 33 of Initiated Act 3 of 1936, of the provision found in Section 3004, Crawford & Moses' Digest - to the effect that the court might direct the sheriff to summon the Special Grand Jury - is immaterial, since we had said, in the quotation from Mr. Justice Hart above, that the court, in having a Grand Jury summoned by the sheriff, was acting under its "inherent constitutional right." *The existence or absence of a statute - authorizing the court to have the sheriff summon the jury - could make no difference when the circuit court was acting under its inherent constitutional right.* So we hold that the circuit court had the power to empanel a Special Grand Jury just as it did in this case. (Emphasis mine.)

Neither legislative action nor silence was of any consequence when *Rowland* was decided. Since that time only the background and the personnel of the court have changed.

This brings us to an examination of the jury wheel law. Ark. Stat. Ann. § 39-101 et seq. (Supp. 1973). It requires the

appointment of jury commissioners prior to November 2 in each year to select prospective jurors for the "following calendar year". § 39-201, 205 (Supp. 1973). They are required to reconvene from day to day until they have selected the number of names required. § 39-205. Those names are placed in the jury wheel. § 39-206 (Supp. 1973). The circuit judge, in his *discretion*, may direct the commissioners who selected the original names to meet and submit additional names to be placed in the jury wheel. § 39-212 (Supp. 1973). This section does not apply when the jury wheel is quashed. The only provision prescribing action when the jury wheel is quashed is § 39-214 (Supp. 1973). When the circuit judge sustains a challenge to the wheel, he must *appoint* a jury commission of not less than three members to select a sufficient number of prospective jurors to constitute a *panel* of jurors *for the trial of a cause*. If that *panel* of jurors is exhausted prior to the formation of the particular *trial jury*, this new commission must be reconvened to place additional names on the list (not in the jury wheel), to be summoned as special jurors in such numbers as are deemed necessary to *complete the jury for the trial of the cause*.

This all leads me to certain inescapable conclusions. The first is that once the jury wheel has been filled, the jury commission originally appointed goes entirely out of existence and has no functions, duties or powers except as provided by § 39-212. The commissioners cannot be recalled to act as commissioners under § 39-214, because of the prohibitions of Ark. Stat. Ann. § 39-202 (Supp. 1973). There is no provision whatever for the selection of prospective grand jurors when the jury wheel has been quashed.

The only provisions relating to grand jurors are Ark. Stat. Ann. §§ 39-217 and 39-205 (Supp. 1973). Under these sections the circuit judge may either draw grand jurors from the *jury wheel* or require the original jury commission appointed to select the required number of names for a grand jury wheel. Names of a panel of grand jurors are to be drawn from the grand jury wheel, if there is one, and from the petit jury wheel, if there is not. A grand jury so selected is to serve during the calendar year for which it is selected unless sooner discharged by the court. There is no provision whatever for

the selection of a special grand jury after the regular grand jury selected has been discharged or, as here, when the jury wheel from which they might be selected has been quashed.

If § 39-218 has the impact accorded it by the majority, then there is absolutely no means of convening a special grand jury after the regular grand jury has been discharged.[2] The General Assembly certainly did not mean to create such a void. We are actually left with the same situation that existed when *Rowland* was decided.

Such a void is wholly undesirable. Even though grand juries are not as important in the scheme of law enforcement as they were before the adoption of Amendment 21 to our constitution, they may still play a very vital role. The grand jury is still an arm of the circuit court. *Spight* v. *State*, 155 Ark. 26, 243 S.W. 860. It is an inquisitorial body with broad investigatory powers. *Collins* v. *State*, 200 Ark. 1027, 143 S.W. 2d 1; *Ex parte Faulkner*, 221 Ark. 37, 251 S.W. 2d 822. Grand jurors are required to present to the grand jury all law violations of which they have knowledge or may receive information. Ark. Stat. Ann. § 43-904, 909 (Repl. 1964). Grand juries are charged with inquiring into cases of persons, either in jail or on bail, who have not been indicted or informed against, into the condition and management of public prisons, into willful and corrupt misconduct in office of public officers and into all public offenses. Ark. Stat. Ann. § 43-908 (Repl. 1964). It may examine all public records and has access to all public prisons [Ark. Stat. Ann. § 43-910 (Repl. 1964)], and has the duty of examining the condition of accounts of collecting officers, dockets of justices of the peace, and matters relating to the common school fund. Ark. Stat. Ann. § 43-911 (Repl. 1964). It may discharge a defendant bound over, but not charged, from custody or exonerate his bail, subject to approval of the court. Ark. Stat. Ann. § 43-921 (Repl. 1964). It may compel a witness to testify even though he claims privilege against incrimination. Ark. Stat.

---

[2] I am not aware of any contention that Ark. Stat. Ann. § 39-218 should be read "Twenty-five persons shall be summoned to serve as a grand or petit juror who [have] not been selected under the provisions of this Act, unless this requirement is waived by the parties." Putting the issue thus begs the question.

Ann. § 28-532 (Supp. 1973).[3]

As a cross section of the community, it is the voice of the citizens as distinguished from that of any official, elected or appointed. In the field of criminal prosecutions it may be an aid or supplement to a prosecuting attorney. Or it may fill a void where a prosecuting attorney is not using the powers of his office to institute prosecutions that should be commenced.[4] If the grand jury is an arm of the court, it is absurd to suggest that a circuit judge who is made aware of investigations that should be conducted or law violations that are not being prosecuted must sit silently and impotently until the next calendar year if the wheel from which a grand jury should be drawn has been quashed or exhausted and the regular grand jury, if one has been impaneled, has been discharged.

While I have found it unnecessary thus far to reach the question whether, under the separation of powers, the General Assembly may regulate and control the inherent constitutional powers of the judicial department, I cannot agree with the majority that it can do so, in spite of the language quoted from *Wilburn v. State,* 21 Ark. 198, decided before our last four constitutions came into existence. I do not mean to suggest that the doctrine of separation of powers did not constitute a part of the Constitution of 1836. I do mean to suggest that the quotation seized upon from *Wilburn* was, in the first place, dictum, pure and simple, and that it was not addressed to its holding that there were two methods for selection of a grand jury, i.e. pursuant to statute and in the exercise of the inherent constitutional powers of the circuit court. The quotation was addressed to the construction of a statute governing the selection of a regular grand jury by the county court, not the circuit court. The question raised was the validity of an indictment because four of the grand jurors were not selected by the county court at the time required by

---

[3]This is not intended to be an enumeration of every power and duty of the grand jury. I only intend to point out that the importance of avoiding any situation in which a circuit judge would have to sit and await the expiration of a calendar year.

[4]I do not mean to imply that such a situation exists in this case. I am speaking hypothetically only. The record before us has no such implication.

law. The court held it invalid. The language which precedes that quoted in the majority opinion is:

> If the *County* Court had general power to select grand jurors, we might be inclined to hold that so much of this provision as prescribed a particular time when the power is to be exercised, was directory merely. But it has no such power. The power given is a special one, and the enacting clause of the statute, which confers it, also expressly limits its exercise. And the conclusion that the legislature probably did not intend the County Court should select grand jurors at any other time than that mentioned, is forfeited by the third section of the act, which makes it the duty of the sheriff to select and summon the requisite number himself if the term of the County Court, at which they are to be selected, is not held. [Emphasis mine.]

I also mean to say that the language quoted by the majority from *Wilburn* has not been applied in other cases, before or after *Wilburn* was decided. In *State* v. *Morrill,* 16 Ark. 384, where we were dealing with the inherent constitutional powers of courts to punish contempt, we said:

> The Legislature may regulate the exercise of, but cannot abridge the express or necessarily implied powers, granted to this court by the constitution. If it could, it might encroach upon both the judicial and executive departments, and draw to itself all the powers of government: and thereby destroy that admirable system of checks and balances to be found in the organic framework of both the Federal and State institutions, and a favorite theory in the governments of the American people.

We followed *Morrill* in stating that the legislature could not change the number constituting a jury from the common law requirement of twelve. *Cairo* v. *Fulton Rlrd. Co.* v. *Trout,* 32 Ark. 17. In holding that the General Assembly could not require this court to give written reasons for its decisions in *Vaughn* v. *Harp,* 49 Ark. 160, 4 S.W. 751, we quoted from an opinion of Mr. Justice Field in *Houston* v. *Williams,* 13 Cal. 25.

He said:

> If the power of the Legislature to prescribe the mode and manner in which the judiciary shall discharge their official duties be once recognized, there will be no limit to the dependence of the latter. If the Legislature can require the reasons of our decisions to be stated in writing, it can forbid their statement in writing, and enforce their oral announcement, or prescribe the paper upon which they shall be written and the ink which shall be used. And yet no sane man will justify any such absurd pretension; but where is the limit to this power if its exercise in any particular be admitted?

In keeping with the principle, we have held that the legislature cannot continue cases in the courts *(Burt* v. *Williams*, 24 Ark. 91), or prescribe rules of interpretation *(Files* v. *Fuller*, 44 Ark. 273), or require continuance of cases in which a legislator was an attorney, regardless of the time when he became associated with the case *(McConnell* v. *State*, 227 Ark. 988, 302 S.W. 2d 805).

Needless to say, I would deny the writ.