Bill ABERNATHY *v.* Honorable John S. PATTERSON, Judge, Pope County Circuit Court

87-308                                            750 S.W.2d 406

Supreme Court of Arkansas
Opinion delivered May 23, 1988

*Shermer & Walker*, for petitioner.

*Steve Clark*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for respondent.

STEELE HAYS, Justice. This is an original action by the petitioner, Pope County Judge Bill Abernathy, to have this court prohibit the Pope Circuit Court from proceeding to trial upon indictments issued against him by a special grand jury. Judge Abernathy contends the grand jury was selected illegally and, hence, its indictments are void. We granted a temporary writ of prohibition and required briefs pursuant to Rule 16 of the Rules of the Supreme Court and Court of Appeals. Having considered the arguments we now dissolve the temporary writ of prohibition.

On November 1, 1986, the Circuit Court of Pope County, acting pursuant to Ark. Code Ann. § 16-32-103 (1987) [Ark. Stat. Ann. § 39-205.1 (Supp. 1985)], selected at random a list of 800 members to serve as petit jurors for 1987. In May and June of 1987, the court, at the request of the prosecuting attorney, selected 60 names from the jury wheel to serve as a special grand jury.

On June 30 the grand jury returned one felony indictment and one misdemeanor indictment with four counts against Judge Abernathy, who then moved to void the indictments. Abernathy contends Ark. Code Ann. § 16-32-103 (1987) [Ark. Stat. Ann. § 39-205.1 (Supp. 1985)] exclusively controls the selection of jurors, whereas the respondent argues that the selection may be made in accordance with either Ark. Code Ann. § 16-32-201 (1987) [Ark. Stat. Ann. § 39-217.1 (Supp. 1985)], or § 16-32-103. The end result, as we interpret these contentions, is that Abernathy maintains § 16-32-103 requires the selection of 100 grand jurors, whereas the circuit judge selected only 60.

Prohibition is an extraordinary writ and is never issued

to prohibit a trial court from erroneously exercising its jurisdiction, only where it is proposing to act in excess of its jurisdiction. *Lowery* v. *State*, 215 Ark. 240, 219 S.W.2d 932 (1949); *Skinner* v. *Mayfield*, 246 Ark. 741, 439 S.W.2d 651 (1969); *Miller* v. *Reed*, 234 Ark. 850, 355 S.W.2d 169 (1961).

Assuming, without deciding, that there were irregularities in impanelling this grand jury, it is clear its members were selected at random from a jury wheel compiled from the voter registration list. Whether the irregularities would constitute reversible error we will not here decide, we need only determine whether the Pope Circuit Court clearly exceeded its jurisdiction.

Petitioner relies primarily on *Streett* v. *Roberts*, 258 Ark. 839, 529 S.W.2d 343 (1975), but we do not read *Streett* as holding that any irregularity in the selection of jurors by circuit courts can be challenged by writ of prohibition. In *Streett* there was no attempt whatever to comply with existing law, and no random selection of grand jurors, the circuit judge of Faulkner County simply dismissed an existing grand jury, presumably properly impanelled, and immediately proceeded to impanel another special grand jury by instructing the sheriff to select 25 grand jurors. That selection, it appears, was to be made by whatever method pleased the sheriff. The prosecuting attorney of that judicial district moved to prohibit this clear violation of law and a majority of this court held the prosecutor had standing to do so and that the circuit court was proceeding in excess of its jurisdiction. We find little similarity in the two situations.

Petitioner cites *Horne* v. *State*, 253 Ark. 1096, 490 S.W.2d 806 (1973), as holding that the provisions of the jury wheel act are mandatory. But we have recognized that some sections of the act are more important than others and that any irregularity in the selection process does not *per se* invalidate the proceedings. In *Huckaby* v. *State*, 262 Ark. 413, 557 S.W.2d 875 (1975), we said:

> Act 568 of 1969 is a comprehensive statute by which the legislature directed the use of a jury wheel and made other changes in the selection of juries. In *Horne* v. *State*, 253 Ark. 1096, 490 S.W.2d 806 (1973), we held to be mandatory that section of Act 568 which requires the jury commissioners to meet each year and select prospective

jurors for the following calendar year. . . .

> In *Horne*, however, we did not hold, as counsel now seem to argue, that every provision in Act 568 is mandatory in the sense that noncompliance requires that the jury panel be quashed. Some sections of the act are more important than others. . . . There was, in the circumstances, a substantial compliance with the statute.

In *Harrod* v. *State*, 286 Ark. 277, 691 S.W.2d 172 (1985), and *Williams* v. *State*, 278 Ark. 9, 642 S.W.2d 887 (1982), we found substantial compliance with the act and rejected challenges to the jury selection. As we have seen, there was not even minimum compliance in *Streett* v. *Roberts, supra.*

■ We conclude that the circuit court of Pope County is not clearly without jurisdiction to proceed in this case and, hence, petitioner's proper remedy, if it becomes necessary, is by appeal rather than by prohibition.

The Temporary Writ of Prohibition is dissolved and writ denied.

HICKMAN, J., and GLAZE, J., concur.

PURTLE, J., dissents.

TOM GLAZE, Justice, concurring. The majority opinion correctly states and addresses the petitioner's contention, but I believe the petitioner is misdirected as to the purpose served by Ark. Code Ann. § 16-32-103 (1987) — Arkansas's law that establishes the procedure for selecting a district's or county's master list of prospective jurors. Section 16-32-103(a) sets forth the random manner by which names of persons are selected from the voter-registration list, and § 16-32-103(b) provides the required minimum numbers of names to be listed from which petit or grand jurors are drawn and empaneled. Section 16-32-103 provides no requirement that a separate master list be kept for petit and grand juries. Nonetheless, petitioner here contends otherwise, arguing that the judge was required to compile a grand-jury-master list, containing 100 prospective grand jurors, from which he should have empaneled the grand jury. Petitioner argues that the judge erred by selecting 60 names from the petit-

jury-master list, which contained 800 prospective jurors.[1]

Assuming the correctness of the petitioner's interpretation of § 16-32-103(b), no prejudice would attach by the procedure employed by the circuit judge since he selected 60 prospective jurors from a petit-jury list (and jury wheel) containing 800 randomly selected names rather than the lesser number of 100 names, which, under petitioner's theory, would have been required if a grand-jury list had been prepared. In sum, the petitioner was favored with a larger master panel (800) from which grand jurors were selected since if a prospective grand-jury list (and jury wheel) had been prepared, the judge would have drawn from only 100 names.

Justice Purtle, in his dissenting opinion, concedes that a separate grand-jury list containing 100 names would comply with the statutory law, but he also suggests that a list with the total of the minimum petit and grand juror numbers (1000 and 100) set out in § 16-32-103(b) would comply with the law as well. Frankly, the language contained in § 16-32-103(b) is not as clear as it should be, but I fail to see how the major purpose and intent of this law is enhanced by a construction that would require adding the minimum members for petit and grand jurors when preparing the master list. The major importance of § 16-32-103 is its employment of a random-selection method used for the empaneling of petit and grand juries. Section 16-32-103 proscribes situations as the one presented in *Streett* v. *Roberts*, 258 Ark. 839, 529 S.W.2d 343 (1975), where the judge instructed the sheriff to select twenty-five grand jurors — the panel from which the judge chose the sixteen-member grand jury.

In the instant case, the petitioner was afforded the protection of the random-selection method which provided a large number (800) of prospective jurors. In enacting § 16-32-103(b), the General Assembly required that at least 100 prospective jurors be randomly selected before the circuit judge proceeded in drawing a grand-jury panel. In my opinion, the judge's action in this cause was totally, not just substantially, consistent with the requirements set out in § 16-32-103. Therefore, I concur with the

---

[1] Petitioner also complains that § 16-32-103(b) required Pope County to have 1,000, rather than 800 prospective petit jurors.

majority that the petitioner's request for a writ of prohibition should be denied.

HICKMAN, J., joins in this concurrence.

JOHN I. PURTLE, Justice, dissenting. I dissent because the majority fails to recognize the mandatory provisions of Ark. Code Ann. § 16-32-103 (1987). The majority seems to hold that so long as there is good faith on the part of the circuit judge and some similarity to the law, then it is alright to proceed in a "short-circuited manner." I cannot go along with such loose interpretation of the clear and unambiguous law applicable to this case.

On May 15, 1987, the court, at the request of the prosecuting attorney, selected 50 names to serve as a special grand jury. These names were randomly selected from the jury wheel which had been previously established on November 1, 1986. On June 8, 1987, the court entered an ex parte order allowing the random selection from the jury wheel of an additional 10 names to serve as prospective grand jurors.

On June 30, 1987, the special grand jury returned one felony indictment and one misdemeanor indictment with four counts against Bill Abernathy. The petitioner moved to void the indictments on the grounds that the grand jury was not properly impaneled and the facts were not properly presented to the grand jury.

The Attorney General concedes that Act 1066 of 1985, Ark. Code. Ann. § 16-32-103 (1987), no longer provides for the use of jury commissioners but argues that the Act did not repeal section (c) of the provisions of Act 485 of 1975, Ark. Code Ann. § 16-32-201(c) (Ark. Stat. Ann. § 39-217.1). I do not agree with the Attorney General, or the majority opinion, on this point. The previous act required that when a grand jury was impaneled, it should consist of sixteen (16) qualified grand jurors plus a reasonable number of alternates. Act 1066 of 1985 requires, in this case, that 100 prospective grand jurors be selected during the month of November or December to serve during the following calendar year. These two provisions simply cannot be reconciled.

The grand jury is a powerful tool and should not be used in a haphazard manner. This court has traditionally taken the view that a circuit court is without jurisdiction in matters where an

improperly impaneled grand jury has returned indictments. I also disagree with the majority's distinction between the case at bar and *Streett* v. *Roberts*, 258 Ark. 839, 529 S.W.2d 343 (1975), where we stated:

> If the grand jury proceedings are void it is clearly appropriate for the prosecuting attorney to commence and prosecute an action [by information] to avoid the waste of the taxpayers' money necessarily involved in the futile trial of criminal cases that might be tainted with reversible error from the very outset.
>
> . . .
>
> [I]s the Writ of Prohibition the proper remedy? We have no doubt that it is. A basic purpose of the writ is to prevent a court from exercising a power not authorized by law, when there is no other adequate remedy. *State, ex rel. Purcell* v. *Nelson*, 246 Ark. 210, 438 S.W.2d 33 (1969). If the circuit court in this instance is exercising its authority in a manner contrary to law, prohibition is the only remedy to provide prompt and effective relief in the public interest.
>
> . . .
>
> [W]as the circuit judge's method of impaneling a special grand jury contrary to law? We have no doubt that it was. There is no dispute about the facts.

The present case is like *Streett* in that there is no dispute concerning the facts. Therefore, we need examine only the law to reach the right result. The controlling statute is Ark. Code Ann. § 16-32-103, which provides for the manner and selection of jurors as follows:

> (a) During the month of November or December of each year, the prospective jurors for the following calendar year shall be selected from among the current list of registered voters of the applicable district or county in the following manner:
>
> (1) The circuit judge, in the presence of the circuit clerk, shall select at random a number between one (1) and one hundred (100), inclusive, which shall be the starting

number, and the circuit court shall then select the person whose name appears on the current voter registration list in that numerical position, counting sequentially from the first name on the list.

The statute designates the number of persons to be selected based upon the number of qualified registered voters in the district or county as reflected by the current voter list. The minimum number of prospective petit jurors required for Pope County is 1,000 and the minimum number of prospective grand jurors is 100. The court may select a greater number but has no authority to select fewer than the minimum number designated by statute.

In the present case the circuit court complied with neither the old nor the new law in selecting the grand jury. Act 1066 establishes the minimum number of both prospective petit and grand jurors which must be selected from the outstanding voter registration list. The Act does not specify whether the grand jury panel can be pulled from the petit jury wheel. Because the Pope County Circuit Court failed to select the minimum number of jurors for the grand jury panel, its action rendered the indictments void. The circuit court could have complied with the present law by placing eleven hundred (1100) names in a master jury wheel box and withdrawing one hundred (100) to serve as the grand jury; or the circuit court could have selected one hundred (100) names from the qualified voter registration list to establish a separate grand jury panel.

The failure of the court to establish a pool containing the minimum number of prospective jurors was fatal. The reduced number in the petit jury wheel automatically reduced the number of eligibles from which to draw the grand jury. The lack of the minimum number for the prospective grand jury list further reduced or limited the petitioner's opportunity for a cross-section of his peers to serve on the jury. This procedure is contrary to expanding the random selection of grand and petit jury members as intended by Act 1066. If the number of prospective grand jurors can be reduced by fifty percent (50%), as was done in this case, what would prevent the number from being reduced by 75% or more?

The respondent argues that the old system was used in this case and that the grand jury was properly selected because a

sufficient number of persons was drawn to provide for 16 qualified grand jurors plus a reasonable number of alternates. This could be said about any list of 16 or more qualified electors regardless of how the names were obtained. That is the evil of the old system which was changed by the legislature. As previously stated, section 16-32-201(c) is in direct conflict with the new Act. It was therefore repealed by implication.

I agree with the respondent that statutes must be construed together and reconciled, if possible. *Poe* v. *Housewright*, 271 Ark. 771, 610 S.W.2d 577 (1981). Likewise repeals by implication are not favored. *Davis* v. *Cox*, 268 Ark. 78, 593 S.W.2d 180 (1980). In the present case the General Assembly repealed "All laws and parts of laws in conflict with this Act [Act 1066 of 1985]. . . ." Repeal by implication will not be adjudged unless the legislative intent is clear and necessary. In *McDonald* v. *Wasson*, 188 Ark. 782, 67 S.W.2d 722 (1934), this court, at page 788, stated:

> The law as to implied repeal is stated in 59 C.J. 904, as follows: "An implied repeal is one which takes place when a new law contains provisions which are contrary to, but do not expressly repeal, those of a former law. A statute, or a provision thereof, may be repealed by implication. Whether it has been so repealed is a question of legislative intent. While such a repeal is not favored, nevertheless it must be recognized and accorded effect where it is apparent that it was intended. Conversely, there is no room for repeal by implication where no legislative intent to repeal is indicated or expressed, or an intent not to repeal is apparent or manifest."

It is obvious that the legislature intended to eliminate the jury commissioner system when Act 1066 of 1985 was enacted. The law no longer provides for selecting prospective jurors by jury commissioners. These duties are now required to be performed by the circuit judge. The heart of the new statute is to provide for a random selection of both grand and petit juries. The number selected for each panel is determined by the number of persons currently registered to vote. These requirements are incompatible with the former method of selection of juries by commissioners. Therefore, I believe Act 1066 repealed any provision of the previous statutes providing for selection of juries in any manner

inconsistent with the provisions of the Act. Because the indictments are illegal and void the trial court has no authority to proceed further based upon these indictments.

The concurring opinion of Justice Glaze obviously does not comprehend this dissent or the law. Therefore, I will not address his opinion.

I would grant the writ.