Gordon Randall GWATHNEY,
Appellant,

v.

STATE of Arkansas, Appellees.

No. CR 09–263.

Supreme Court of Arkansas.

Nov. 5, 2009.

Durrett & Coleman, West Memphis, by: Gerald A. Coleman, for appellant.

Dustin McDaniel, Attorney General, by: John T. Adams, Assistant Attorney General, for appellee.

ANNABELLE CLINTON IMBER, Justice.

Appellant Gordon Randall Gwathney was convicted of three counts of murder in the deaths of his estranged wife's mother and grandparents and two counts of attempted murder for the shooting of his estranged wife's brother and an officer. He was sentenced to an aggregate term of life imprisonment without parole plus 40 years. On appeal, Gwathney contends that the circuit court erred (a) in refusing to quash the entire jury panel and (b) in refusing to remove two jurors for cause. He further argues that the circuit court erred in denying his motion for a directed verdict. As this is a criminal appeal in which a sentence of life imprisonment has

been imposed, our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(a)(2) (2009). We find no error and affirm.

On the night of February 13, 2007, Appellant went to the home of his estranged wife, Lisa Reeves, which she shared with her mother and grandparents. He began to argue with Lisa about money and a credit card. Eventually, the argument escalated, and Appellant started hitting his wife. Her mother intervened and threatened to call the police. He then turned on Lisa's mother and started hitting her. Lisa ran to the back of the house to get her phone. Upon hearing the sound of a gunshot, she barricaded herself in her grandparent's bedroom, jumped out of the bedroom window, and ran next door to her brother's house. After Lisa described the situation to her brother, he went next door. As he approached the house, Appellant fired multiple shots at him, causing Lisa's brother to sustain several gunshot wounds. An officer arriving at the scene was also shot and wounded. Lisa's grandparents, who were also inside the house, sustained gunshot wounds that proved to be fatal. Appellant fled the scene, and, by monitoring his ATM withdrawals, law enforcement authorities were able to locate him in Laredo, Texas. At the time of his arrest, officers found a black, 40 caliber handgun and two clips, one of which was in his back pocket. They also found a 7.62 millimeter AK–47 assault rifle, along with a canvas bag that contained four clips.

## I. Sufficiency of the Evidence– Affirmative Defense

Appellant argues that the circuit court erred in denying his motion for a directed verdict on grounds that he was not guilty by reason of mental disease or defect at the time he committed the alleged criminal offenses. Specifically, he points to the testimony of two medical experts who opined

that Appellant was suffering from delirium brought on by the interaction of his Post Traumatic Stress Disorder and certain medications prescribed by the Veterans Administration. The State contends that there was substantial evidence to support the conviction and that the burden was on the Appellant to prove this affirmative defense.

Although Appellant raises this issue as his final point on appeal, this court has stated that double-jeopardy concerns require this court review arguments regarding the sufficiency of the evidence first. *Boldin v. State*, 373 Ark. 295, 283 S.W.3d 565 (2008). With respect to a motion for a directed verdict based on an affirmative defense of insanity, the same double-jeopardy concerns attach to the sufficiency of the evidence. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

Arkansas Code Annotated § 5–2–312 provides that:

(a)(1) It is an affirmative defense to a prosecution that at the time the defendant engaged in the conduct charged he or she lacked capacity as a result of mental disease or defect to:

(A) Conform his or her conduct to the requirements of law; or

(B) Appreciate the criminality of his or her conduct.

With respect to affirmative defenses, such as insanity, the burden is on the defendant to prove the affirmative defense by a preponderance of the evidence. *Navarro v. State*, 371 Ark. 179, 264 S.W.3d 530 (2007). Furthermore, our court "has a well-settled policy of affording deference to jury verdicts. The determination of the credibility of trial witnesses and the weighing of the evidence is solely within the province of the jury." *Id.* at 192, 264 S.W.3d at 539. The jury is not bound to accept the opinion testimony of any witness as true and con-

clusive, including the opinion testimony of experts. *Id.* at 191, 264 S.W.3d at 539. This court's standard of review of a jury verdict rejecting the defense of mental disease or defect ⌊₄is whether there is any substantial evidence to support the verdict. *Id.* at 190, 264 S.W.3d at 538. This court treats a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Navarro v. State,* 371 Ark. 179, 264 S.W.3d 530. We view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict and we affirm if substantial evidence exists to support the verdict. *Id.*

■ On appeal, Appellant suggests that this court disregard the testimony of Dr. Jeremy Hinton, a staff psychiatrist with the Arkansas State Hospital, which refuted the testimony of Appellant's own medical experts, Dr. Rebecca Rutledge, a clinical psychologist, and Dr. Thomas Bannister, a psychiatrist specializing in psychopharmacology. Dr. Hinton concluded that Appellant did not experience delirium at the time of the offense. According to Dr. Hinton, Appellant did not exhibit the symptoms of delirium before or after the charged conduct. In fact, during the days leading up to the incident, neither his family nor his employer noticed any symptoms of confusion and disorientation, or a reduced ability to focus, shift or maintain attention. Furthermore, after the violent confrontation with his estranged wife and her family, Appellant was able to access an ATM and drive to Laredo, Texas. Dr. Hinton explained that a person suffering from delirium "would have a really hard time, if not impossible time, accessing an ATM" and navigating "a vehicle all the way to Laredo without being involved in an accident." In sum, Dr. Hinton did not find that Appellant had any mental disease

or defect of such severity that would keep him from (a) knowing that the charged conduct was illegal, and (b) having the capacity to conform his behavior to the ⌊₅requirements of the law. Because this court must review the evidence in the light most favorable to the State, with the determination of credibility being solely within the province of the jury, we conclude that substantial evidence supports the jury's verdict. Therefore, we affirm on this point.

## II. *Motion to Quash the Jury Panel*

■ For his second point on appeal, Appellant argues that the circuit court erred in denying his motion to quash the entire jury panel. He claims that (1) the circuit clerk improperly excused jurors, thereby violating the court's order reflected in the summons [1] sent to prospective jurors, and (2) the jury selection process violated the court's pretrial order granting Appellant's motion to assure the selection of a fair and impartial jury from a cross-section of the community. Appellant further asserts that he was prejudiced by the jury selection process. The State responds, asserting that the circuit court substantially complied with the jury selection statutes, Ark.Code Ann. § 16–32–101 *et seq.,* and that Appellant failed to show he was prejudiced by the jury selection process.

■ We have previously held that a trial court's refusal to quash a jury panel is reviewed for an abuse of discretion. *Kelly v. State,* 350 Ark. 238, 85 S.W.3d 893 (2002) (citing *Newman v. State,* 327 Ark. 339, 939 S.W.2d 811 (1997)). Irregularities affecting the selection of the ⌊₆jury panel warrant a new trial only if timely objection was made prior to the verdict and the resulting prejudice is shown. *Mosby v.*

1. *"ONLY THE JUDGE CAN EXCUSE A PERSON FROM JURY DUTY* The Court Clerk Cannot Excuse a Person from Jury Duty"

*State,* 249 Ark. 17, 457 S.W.2d 836 (1970). Furthermore, an appellant is in no position to assert that he was prejudiced by such irregularities unless he has exhausted his peremptory challenges. *Id.*

Pursuant to Ark.Code Ann. § 16–33–302, a challenge to the trial jurors can be made either to the panel or to the individual juror. Ark.Code Ann. § 16–33–302(1) (1999). Furthermore, a challenge to the jury panel "shall be sustained by the court if it shall appear that there was a substantial irregularity in the drawing or summoning of the jury." Ark.Code Ann. § 16–32–109(b)(1) (Repl.1999). In *Mosby v. State,* we held that a substantial irregularity existed in the manner of the selection of the jury panel. 249 Ark. 17, 457 S.W.2d 836. The selection of the grand and petit jury panels by less than three jury commissioners was not in accordance with Ark. Stat. Ann. § 39–201 (Repl.1962) (now codified at Ark.Code Ann. § 16–32–102 (Repl.1999)) and constituted prejudicial error. *Id.* Following the enactment of the Arkansas Jury Wheel Act of 1969, a comprehensive statute by which the legislature directed the use of a jury wheel and made other changes in the selection of juries, we held to be mandatory that section of the Act which requires three jury commissioners to meet each year and select prospective jurors for the following calendar year. *Horne v. State,* 253 Ark. 1096, 490 S.W.2d 806 (1973) (interpreting Ark. Stat. Ann. § 39–205, now codified at Ark.Code Ann. § 16–32–103 (Supp.2009)). *See Shelton v. State,* 254 Ark. 815, 496 S.W.2d 419 (1973) (chancery court took names from the jury wheel, but the names were not placed in the jury book, and, after their use, those names were discarded); *Streett v. Roberts,* 258 Ark. 839, 529 S.W.2d 343 (1975) (the use of the jury wheel mandatory in the selection of grand juries and petit juries).

In *Huckaby v. State,* 262 Ark. 413, 557 S.W.2d 875 (1977), our court made clear that every provision in the Jury Wheel Act was not mandatory:

> In *Horne,* however, we did not hold ... that every provision in [the Act] is mandatory in the sense that noncompliance requires that the jury panel be quashed. Some sections of the act are more important than others.

*Id.* at 415, 557 S.W.2d at 877. Thus, a typewritten list of names drawn from the jury wheel was deemed to be in substantial compliance with the statute directing that names drawn from the jury wheel be recorded in a jury book. *Id.* (interpreting Ark. Stat. Ann. § 39–209 (Supp.1975), now codified at Ark.Code Ann. § 16–32–105 (Supp.2009)). We reiterated in *Welch v. State,* 269 Ark. 208, 599 S.W.2d 717 (1980), that § 16–32–105 is not mandatory "in the sense that a failure to comply strictly with a particular provision requires that the entire panel be quashed." 269 Ark. at 210, 599 S.W.2d at 719. This court applied the substantial compliance standard again in *Harrod v. State,* 286 Ark. 277, 691 S.W.2d 172 (1985). In that case, the names of individuals excused from serving as jurors and the reasons for their excusal were available, though not in the precise form contemplated by the Jury Wheel Act. *Id. See also Abernathy v. Patterson,* 295 Ark. 551, 750 S.W.2d 406 (1988) (any irregularity in the selection process does not *per se* invalidate the proceedings.).

The relevant facts in the instant case are as follows: Prior to trial, jury summonses were mailed to approximately 300 prospective jurors. Of that number, the circuit clerk received 200 responses. The clerk gathered the information and documentation from those responses, as well as other communications with jurors, and then separated the information into two categories: the "available board" or the

"excused/disqualified board." This information was available for the judge to review.

The process of jury selection began on the first day of trial, July 21, 2008, and concluded on July 24, 2008. Sixty-three prospective jurors appeared and answered the roll call on the first day of trial; an additional three or four prospective jurors appeared on the second day of trial. The circuit court conducted the initial voir dire of the entire venire. Thereafter, the venire was questioned in panels of four by the prosecutor and defense counsel.

Prior to individual voir dire, Appellant moved to quash the jury panel as not being a proper reflection of a cross-section of the community, The next day, following the commencement of individual voir dire, Appellant asserted an additional argument in support of his motion to quash the entire jury panel. Specifically, he claimed that the process by which 100 prospective jurors were excused from duty was a violation of his right to due process and to have a jury composed of his peers. Appellant submitted the testimony of Mary Ann Wilkinson, Circuit Clerk, and Ex-officio Recorder of Lee County, in support of his motion to quash the jury panel. With regard to the process by which approximately 100 prospective jurors were excused or disqualified, the following colloquy occurred during Ms. Wilkinson's direct examination by defense counsel:

Q   Okay. Now, as part of your job, has the Court given you authority to allow jurors to be excused from service?

A   Well, I keep two boards, one has the available list; one has a potentially or they have valid reasons to be excused. I gather the information and documentation for that for the Judge to review. The information is here for his review.

Q   Okay. Now, when you're holding—you say juror number 2 excused in—

A   Well, that's just my terminology, to separate it. This is petit jurors (pointing). And this is excused and disqualified, but it's not that I actually excused. It is there for the judges to review. They've never disputed the information and documentation that I've had or told me that.

. . . .

Q   Ma'am, if you can—okay. If you can tell me, what are your guidelines for determining whether they can be excused that the Judge gave you?

A   Well, I don't have any guidelines. The Judge does it. I just want something in my file to base whatever they feel is valid for their—for them to be excused.

. . . .

Q   How, physically, do you determine who to accept and who to reject or excuse?

A   Well, if they give me a(sic) excuse, I put it on this board.

Q   Okay.

A   Or if they call me and they say they've got this, they've got that, then I will make a notation on there.

Q   And that's all in there on the board?

A   Yes, yes; it should.

Q   On the board as we've called it?

A   Yes, sir; yes.

Q   And—but when you go through that, when do you tell them that they're excused?

A   I tell them if they do not hear back from the Judge, that they will be excused.

Q   Okay. And then when do you present the Judge with the board?

A   Any time he's here, it's available and they know.

Q Okay. So the way this works is that the Judge—just so I'm clear, they call you, they give you their excuse or reason they want off?

A Yes.

Q You tell them, okay, you're off unless you hear back from us?

A From the Judge, from the Judges.

Q Okay.

A It's subject to the Judge's approval.

Q Okay. So when do you check with the Judge to determine when the approval is?

A Whenever the Judge comes in. They know where this board is. If they want to peruse it, you know, I don't know if they look at it or not.

Q Okay. So what you're saying is they basically trust your judgment?

A They've never questioned my documentation. I don't know. So I assume that they are agreeing that I got documentation for them to be excused, but they make that determination.

. . . .

Q Okay. And the same, just so I know, the discipline, so I don't have to ask this question on every one. You tell them they're excused, you put this documentation in and then you don't communicate that to the Judge, you just put it in the board for the Judge to review?

A I do not tell them they are excused. I tell them it's on the approval of the Judge.

Q Okay. But you tell them not—that they don't have to show up unless they hear from the Judge?

A That's true.

During Ms. Wilkinson's cross examination by the prosecutor, the following colloquy occurred:

Q Mrs. Wilkins, so I can understand, as you get a juror questionnaire back, one of two things is—one of three things happens: either the juror attaches some document saying that I've got health problems or work problems, something along those lines?

A Yes, sir.

Q In which case, you tell them that they are tentatively excused, but the Judge has the final say?

A Yes, sir.

Q Or you get a questionnaire back where the juror has written down on the questionnaire what appears to be a valid excuse?

A Yes, sir. And sometimes they call back with a medical excuse or work hardship or some other—

Q And you tell them the same thing?

A Yes, sir.

Q And then the third here is the juror may come by or call you in person and say here is what the problem is?

A Yes. Or they may leave a note or they may talk to one of my deputies. But either way, I get the information.

Q In which case, you document that and tell them the same thing?

A Yes, sir.

Q That they are tentatively excused unless the Judge says otherwise?

A Yes.

Q And then you take those and you attach them to that clip board that you call the board?

A Yes; just to separate them from—

Q And then the board is available in your office, and for the Judge's review?

A That's correct.

Q So far as you know, they review them?

A Yes, sir.

Despite the circuit clerk's testimony that the "excused/disqualified board" was available for the judge's review and, so far as she knew, the judge reviewed the board, Appellant asserts that the judge "did not decide who was excused." He supports this assertion by challenging the adequacy of the information submitted by six prospective jurors who were requesting to be excused from jury duty due to a work hardship or medical condition. Appellant's reasoning is flawed. He assumes that just because he questions the adequacy of the documentation, then the judge must not have reviewed and approved the jurors' requests to be excused from jury duty. Such an assumption is fallacious.

₁₃The exemptions from jury service are set forth in Ark.Code Ann. § 16–31–103(Repl.1999):

> Any person may be excused from serving as a grand or petit Juror or a Jury commissioner for such a period as the COURT deems necessary, or have his service deferred to another specified term of Court when the state of his health or that of his family reasonably requires his absence, or when, for any reason, his interest or those of the public will, in the opinion of the COURT, be materially injured by his attendance.

Based upon the record before us, we cannot say that the circuit court failed to exercise its discretion with regard to the disqualification or excusal of prospective jurors in this case. According to the testimony of the circuit clerk, she documented each juror's excuse and organized the excuses on the board for the judge to review.

She then informed the prospective jurors that they would be excused subject to the judge's approval. The board with the excuses was made available for the judge to review. The circuit clerk testified that, so far as she knew, the judges reviewed them. Thus, in the absence of "a substantial irregularity in the drawing or summoning of the jury," we must decline to sustain Appellant's challenge to the jury panel. Ark.Code Ann. § 16–32–109(b)(1); *Harrod v. State*, 286 Ark. 277, 691 S.W.2d 172.²

■ ₁₄In any event, Appellant makes no showing of prejudice. In *Berna v. State*, 282 Ark. 563, 670 S.W.2d 434 (1984), a case involving alleged irregularities in the jury panel, we made it clear that the appellant must demonstrate prejudice as well as any error. Appellant, nonetheless, asks this court to presume prejudice based upon the number of jurors excused. This argument is without merit. We reiterate that an irregularity in the selection process does not *per se* invalidate the proceedings. *Abernathy v. Patterson*, 295 Ark. 551, 750 S.W.2d 406. Furthermore, there has been no suggestion that the discrepancy in the number of venire persons scheduled for jury service, some three hundred individuals, and the number actually appearing, around sixty-seven, "was the result of any attempt to influence the makeup of the jury panel." *Ruiz v. State*, 299 Ark. 144, 157, 772 S.W.2d 297, 303 (1989).

■ While the selection of the petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury

---

**2.** We note that the evidence regarding the procedure followed by the circuit judge in excusing potential jurors was not fully developed below. Under Ark.Code Ann. § 16–32–106(d) (Supp.2007), only a circuit judge may excuse a potential juror from jury service. Circuit Clerk Mary Ann Wilkinson prepares a list of those persons seeking to be excused from jury service and assumes they are excused unless a circuit judge tells her otherwise. Wilkinson testified that the circuit judges know where the lists are, and so far as she knows, the circuit judges review the lists she prepares; however, there was no evidence showing that the required review did not take place in the present case.

trial, there is no requirement that the petit jury actually chosen must mirror the community and reflect the various distinctive groups in the population. *Sanders v. State,* 300 Ark. 25, 776 S.W.2d 334 (1989) (citing *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975)). A defendant in a criminal case is entitled to require that the State not deliberately and systematically deny to members of his distinctive group the right to participate, as jurors, in the administration of justice. *Id.* The record in the instant case does not reflect the wholesale excusal of any distinctive group of prospective jurors. *Jones v. State,* 317 Ark. 131, 876 S.W.2d 262 (1994); *Kitchen v. State,* 264 Ark. 579, 572 S.W.2d 839 (1978); *Hall v. State,* 259 Ark. 815, 537 S.W.2d 155 (1976). Accordingly, we conclude that the circuit court did not abuse its discretion in refusing to quash the entire jury panel.

### III.  *Motion To Strike Jurors*

For Appellant's final point on appeal, he argues that two jurors, George Ramsey and David Lee Jackson, should have been removed for cause. The circuit court's rejection of this argument, according to Appellant, forced him to exhaust all his peremptory challenges. In response, the State points out that both jurors indicated they could follow the law and understood that a defendant was presumed innocent until proven guilty beyond a reasonable doubt.

Arkansas Code Annotated § 16–33–304(b)(2)(A) provides that:

(a) The challenge for cause may be taken either by the state or by the defendant.

(b) It may be general, that the juror is disqualified in serving in any case, or particular, that he is disqualified from serving in the case on trial.

. . . .

(2) Particular causes of challenge are actual and implied bias.

(A) Actual bias is the existence of such a state of mind on the part of the juror, in regard to the case or to either party, as satisfies the court, in the exercise of a sound discretion, that he cannot try the case impartially and without prejudice to the substantial rights of the party challenging.

Ark.Code Ann. § 16–33–304(b)(2)(A) (Repl. 1999). On review, we have held that "it is within the discretion of the trial court to determine whether a juror has actual bias, and have stated that a judgment will not be reversed unless the court abuses its discretion." *Henslee v. State,* 251 Ark. 125, 127, 471 S.W.2d 352, 354 (1971). Furthermore, jurors are presumed to be unbiased and the burden is on the appellant to show otherwise. *Kelly v. State,* 350 Ark. 238, 85 S.W.3d 893 (2002). "Additionally, jurors are presumed to comprehend and follow court instructions." *Id.* at 241, 85 S.W.3d at 895.

In the case at bar, the circuit court questioned the challenged jurors about their ability to follow the court's instructions on the law. While George Ramsey initially equivocated about whether he could presume the innocence of Appellant, when questioned by the trial judge, he agreed that he could in fact make a presumption of innocence in this case. Likewise, David Lee Jackson, when questioned by the trial judge, made clear that he could follow the law and put aside what he had seen about the case outside the courtroom and judge the prosecution's case on its own merits. We cannot say that the circuit court abused its discretion in failing to strike Ramsey and Jackson. In view of our holding on this point, we need not address Appellant's assertion that the circuit court erred in denying his

motion for two additional peremptory challenges.

### IV.  *Rule 4–3(i) Review*

In compliance with Arkansas Supreme Court Rule 4–3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Appellant, and no prejudicial error has been found.

Affirmed.